**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GRAND BRUCE,**

*Plaintiff,*

Case No.: 8:26-cv-2785

*v.*

**JURY TRIAL DEMANDED**

**CLARITY SERVICES, INC.,**

*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Grand Bruce ("Mr. Bruce"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Fed R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4. Venue is proper in the Middle District of Florida, Tampa Division, because the acts complained of were committed and/or caused by the Defendant within Polk County, Florida.

## PARTIES

### Mr. Bruce

5. Mr. Bruce is a natural person residing in Auburndale, Polk County, Florida.

6. Mr. Bruce is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Mr. Bruce

10. Around January 25, 2022, Clarity began maintaining a credit file on Mr. Bruce.

11. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

12. On or about August 13, 2026, Mr. Bruce requested and obtained a copy of his consumer disclosure from Clarity.

13. Mr. Bruce's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Inaccurate Driver's License Numbers**

14. Clarity's credit file on Mr. Bruce contains four separate driver's license entries – which is itself impossible, as Florida law permits a person to hold only one driver's license at a time.

15. Several driver's license entries are the wrong length: "XXXXXXXX4000" (12 characters) and "XXXXXXXX1760" (12 characters). A valid Florida driver's license number is exactly 13 alphanumeric characters.

16. These license entries had no chance of being accurate. The defect is evident from the entries themselves, without reference to any outside information, and the data is virtually assured to be false.

17. Reasonable procedures designed to assure maximum possible accuracy of consumer reports would have flagged and rejected these entries, rather than incorporating them into consumer reports sold to third parties.

18. Lenders rely on driver's license data to confirm a consumer's identity; the presence of impossible license data in Mr. Bruce's file creates the false impression that his identity cannot be confirmed, directly damaging his creditworthiness.

**Impermissible Redactions**

19. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

20. Clarity's disclosure to Mr. Bruce redacted all but four digits of the account number on his Mobiloans/Cortex Sovereign tradeline, disclosing only as "XXXXXXXX3380."

21. The FCRA permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g). Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's file disclosure.

22. Because Clarity has masked the account number, Mr. Bruce cannot determine from the disclosure whether the account Clarity reports is in fact his account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether. The redaction does not aid the accuracy of the disclosure – it forecloses his ability to verify the underlying data at all.

23. Clarity's decision to disclose the account only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of his file as 15 U.S.C. § 1681g(a)(1) requires.

**Overlapping Housing Statuses**

24. Clarity's Disclosure to Mr. Bruce reveals that his credit file includes data indicating that during various overlapping timeframes, Mr. Bruce's housing status was "OTHER," "OWN" and "RENT."

25. For example, Clarity reported Mr. Bruce's housing status as "OTHER" as of December 22, 2023; and "OWN" from August 24, 2022 through October 13, 2024; and "RENT" from December 22, 2023 through April 13, 2026.

26. The multiple and contradictory housing statuses Clarity reported for Mr. Bruce cannot all be simultaneously accurate.

27. The designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender. More importantly, it is false – Mr. Bruce was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

28. Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk, and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Mr. Bruce.

29. On December 22, 2023, for example, Clarity incorporated data reporting that Mr. Bruce's housing status was both "OTHER" and "RENT" –

mutually exclusive designations that cannot simultaneously be true for the same consumer on the same day.

30. Mr. Bruce owns his home, so both are false.

31. Clarity is an Experian company: Experian acquired Clarity Services, Inc. in 2017.

32. Experian maintains its own consumer file on Mr. Bruce, and that file reflects an open mortgage secured by his home. A mortgage is, by definition, a loan secured by real property the borrower owns; its presence on Mr. Bruce's Experian file is direct confirmation, within Clarity's own corporate family, that he owns his home and is not a renter.

33. The information contradicting the "RENT" status Clarity reported thus sat within Clarity's own corporate family. A consumer reporting agency following reasonable procedures – and in particular one owned by Experian, the very company whose files reflect Mr. Bruce's homeownership – would not have reported that he rents.

34. Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Mr. Bruce's ability to obtain new credit.

**Clarity's Use of Placeholder Data**

35. Additionally, Clarity incorporated an invalid employer address of "NULL NULL NULL" into Mr. Bruce's credit file.

36. Such reporting provides no meaningful information to a potential lender and was the likely result of the insertion of default, dummy, or placeholder data – the word "null" is itself a stock placeholder used when information that should be present is missing.

37. Thus, Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

**Obviously-False Name Variations**

38. Clarity's reporting of Mr. Bruce's employer's name includes facially-corrupted entries.

39. Within the Employer Name section of Mr. Bruce's report, Clarity incorporated the following variants as if each represented a distinct employer: "BERKLEA PETRLEUM," "BERKLEY PETROLEUM" and "BERKLEY PETROLEUM CORP."

40. At least one of these entries is plainly not the name of any real business – it is the product of a data-handling failure that scrambled the text between the first and last words.

41. No reasonable procedure designed to assure maximum possible accuracy of consumer reports would have allowed such facially garbled employer names to be incorporated into Mr. Bruce's credit file and sold to creditors.

**Obviously-False Income Variations**

42. On December 22, 2023 alone, Clarity simultaneously reported Mr. Bruce's Net Monthly Income as both $1,200 and $4,800.

43. A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

44. No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

45. Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting inconsistent and internally contradictory income figures for Mr. Bruce, Clarity's file creates a false and misleading picture of Mr. Bruce's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

46. Clarity's reporting of Mr. Bruce's pay frequency is internally inconsistent. Clarity's file lists three different pay frequencies for Mr. Bruce – "BIWEEKLY," "MONTHLY" and "WEEKLY" – even though a consumer is paid on only one schedule at any given time.

47. These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

48. Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

49. Clarity's file also carries the same biweekly (every two weeks) schedule under two different labels – "BI-WEEKLY" and "BIWEEKLY" – confirming that Clarity applies no normalization at all to the pay-frequency values it ingests and resells.

50. Clarity's file additionally lists facially absurd pay-frequency values for Mr. Bruce: "JUST BIWEEKLY" – the word "Just" is meaningless in this context and provides no information beyond "BIWEEKLY," yet Clarity's systems treat it as a distinct pay frequency. These entries do not correspond to any actual pay schedule and could not have survived any reasonable procedure designed to assure maximum possible accuracy of consumer reports.

51. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

52. Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

53. A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and impairs the lender's ability to verify the consumer's identity during underwriting.

54. Clarity has sold at least 25 consumer reports on Mr. Bruce in the past two years.

55. On information and belief, each of these 25 reports contained some, or all of the aforementioned inaccuracies in Clarity's file on Mr. Bruce.

56. Clarity's inclusion of demonstrably false information about Mr. Bruce's driver's license information, employer address, housing status, net monthly income, pay frequency, and phone-number information had a significant negative impact on Mr. Bruce's ability to obtain new credit with favorable terms.

57. Clarity was aware that when it sold reports on Mr. Bruce that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

58. As set forth above, on or about August 13, 2026, Mr. Bruce requested a copy of his consumer credit disclosure from Clarity.

59. Upon receipt of Mr. Bruce's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

60. The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

61. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

62. For example, Clarity disclosed an inquiry from April 13, 2026 as "Loan Veros Credit/Elsker Inc." Clarity disclosed this inquiry by listing "Loan Veros Credit" and "Elsker Inc" together, separated only by a forward slash, without identifying which of these entities actually requested the report, what the relationship between them is, or whether either name even refers to an operating business as opposed to a software product, internal code, or unrelated process.

63. Clarity provided no address, phone number, website, email, or other contact information that would allow Mr. Bruce to identify either entity or the role each played in obtaining his consumer report – information the FCRA expressly requires Clarity to disclose.

64. Clarity disclosed these entities using abbreviations or shortened names that no reasonable consumer would understand, and provided no address, phone number, or other identifying information.

65. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

66. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

67. Further, the lack of accurate, full disclosure of who had obtained his credit report caused Mr. Bruce great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

68. Clarity's incomplete disclosure of who accessed Mr. Bruce's credit report and why caused Mr. Bruce significant frustration, stress, and concern.

**Clarity Fails to Investigate Disputes**

69. Clarity, unlike its parent company Experian Information Solutions, Inc. ("Experian"), does not provide consumers any ability to dispute inaccurate information online.

70. On September 1, 2026, after becoming aware of Clarity's reporting, Mr. Bruce disputed the accuracy of the false information appearing on his consumer disclosure to Clarity, including the inaccurate driver's license information, employer address, housing status, net monthly income, pay frequency, and phone-number information.

71. Clarity, upon receipt of Mr. Bruce's dispute, was required to make a reasonable investigation into his disputes and report the results of the investigation back to him within 30 days. See 15 U.S.C. § 1681i(a)(1)(A).

72. Rather than investigate, Clarity responded that it would not investigate Mr. Bruce's dispute at all.

73. Clarity's outright refusal to investigate is a failure to make any reasonable investigation as required by the FCRA, § 1681i(a)(1)(A); a CRA that declines to investigate has, by definition, conducted no investigation at all.

74. Under 15 U.S.C. § 1681i(a)(1)(A), the duty to reinvestigate is mandatory and attaches the moment the CRA receives the dispute. *See, e.g., Younger v. Experian Info. Sols., Inc.,* 817 F. App'x 862, 866 (11th Cir. 2020).

75. The fact that Clarity failed to make any investigation into multiple and obvious errors is inherently unreasonable.

76. Mr. Bruce's experience with Clarity is far from unique.

77. Clarity frequently fails to investigate consumer disputes, either ignoring them completely or sometimes sending a form letter to the consumer stating it could not identify what was being disputed, even when the consumer's dispute is crystal-clear.

78. Clarity, unlike Experian, does not utilize e-OSCAR, an online platform designed to quickly, efficiently, and effectively resolve consumer disputes.

79. Clarity must thus use much more labor-intensive methods to investigate disputes.

80. On information and belief, Clarity frequently declines to investigate disputes as a means to avoid the time and cost of investigating consumer disputes, which it lacks any efficient way of processing.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

81. Clarity operates in stark contrast to its parent company, Experian.

82. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

83. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Mr. Bruce is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

84. The inaccuracies in Mr. Bruce's file are not isolated transcription errors traceable to a single furnisher.

85. They span multiple categories of the data Clarity reports – including driver's license information, employer address, housing status, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would

have caught before the data was incorporated into Mr. Bruce's file and sold to creditors.

86. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

87. Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – invalid driver's license entries, opaque or bundled inquiry disclosures, and the wholesale incorporation of placeholder or impossible data.

88. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

89. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Mr. Bruce.

90. Mr. Bruce has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

**COUNT I**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

91. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

92. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Bruce, as Clarity sold consumer reports containing the aforementioned inaccuracies, each of which was readily apparent on its face.

93. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

94. Clarity's conduct was thus willful or done with a reckless disregard for Mr. Bruce's rights under the FCRA.

95. As a result of its conduct, Clarity is liable to Mr. Bruce for the greater of Mr. Bruce's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Bruce's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

96. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

97. Clarity owed Mr. Bruce a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Bruce.

98. Clarity breached this duty when it sold at least 25 consumer reports containing the inaccuracies outlined herein.

99. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Bruce is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT III**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**

100. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

101. Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Bruce with a redacted version of his Consumer Disclosure, including by redacting the account number on his MobiLoans/Cortex Sovereign tradeline while disclosing that tradeline's balance, status, and payment history.

102. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

103. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

104. As a result of its conduct, Clarity is liable to Mr. Bruce for the greater of Mr. Bruce's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Bruce's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**
**(Pled in the Alternative to Count III)**

105. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

106. Clarity owed Mr. Bruce a legal duty to accurately disclose all the information in his credit file upon his request.

107. Clarity breached this duty when it provided Mr. Bruce with a redacted version of his Consumer Disclosure.

108. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Mr. Bruce is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

109. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

110. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Mr. Bruce's consumer report during the one-year period preceding the date upon which he made the request.

111. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

112. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

113. As a consequence, Clarity is liable to Mr. Bruce for the greater of Mr. Bruce's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Bruce's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VI**
**<u>CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)</u>**
**(Pled in the Alternative to Count V)**

114. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

115. Clarity owed Mr. Bruce a legal duty to disclose the identity of each user that obtained his consumer report within one year of Mr. Bruce's request.

116. Clarity breached this duty when it failed to identify each person, including end-users, who procured Mr. Bruce's consumer report.

117. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Mr. Bruce is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT VII**
**<u>WILLFUL VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)</u>**

118. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein.

119. Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of Mr. Bruce's dispute.

120. Clarity's conduct was a result of its regular policies and procedures, which frequently result in it not conducting any investigation at all, and/or claiming it "can't identify" what the consumer is disputing, even when it is abundantly clear, as in the instant matter.

121. Clarity's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Bruce.

122. Accordingly, pursuant to 15 U.S.C. § 1681n, Clarity is liable to Mr. Bruce for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorneys' fees, and costs.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Bruce's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VIII**
**NEGLIGENT VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)**
**(Pled in the Alternative to Count VII)**

123. Mr. Bruce adopts and incorporates paragraphs 1 through 90 as if fully stated herein, and pleads this count strictly in the alternative.

124. Clarity had a legal duty to reasonably investigate Mr. Bruce's disputes.

125. Clarity breached this duty when it failed to make any investigation whatsoever.

126. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681i(a)(1)(A), and Mr. Bruce is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Bruce respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on September 21, 2026, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*